## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| LORA KNOX, JODY KNOX, JEFFREY ADAMS, and ERIN ADAMS, individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>  v.<br><br>AMERICAN FAMILY INSURANCE COMPANY, AMERICAN FAMILY MUTUAL INSURANCE COMPANY, S.I., and AMERICAN FAMILY INSURANCE MUTUAL HOLDING CO.,<br><br>       Defendants. | **Civil Action No.**<br><br>**JURY TRIAL DEMANDED** |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiffs Lora Knox, Jody Knox (together, "Knox" or the "Knox Plaintiffs"), Jeffrey Adams, and Erin Adams (together, "Adams" or the "Adams Plaintiffs") (collectively, the Knox Plaintiffs and Adams Plaintiffs are referred to herein as "Plaintiffs"), individually and on behalf of all others similarly situated, through their undersigned counsel, file this Class Action Complaint ("Complaint"), and allege based upon personal knowledge as to themselves and their acts, the investigation of counsel, and publicly available information, as follows:

1.     Plaintiffs bring this class action lawsuit for breach of contract and insurance bad faith against Defendants American Family Insurance Company, American Family Mutual Insurance Company, S.I., and American Family Insurance Mutual Holding Co. (collectively, "American Family" or "Defendants"), in connection with American Family's standard practice of

prematurely terminating Rental Reimbursement Coverage benefits when it declares a vehicle a total loss.[1]

2.    Specifically, American Family sells automobile insurance policies that include optional coverage for "Rental Reimbursement" (hereafter referred to as "Rental Reimbursement Coverage"). Rental Reimbursement Coverage is intended to reimburse an insured for transportation expenses, such as the cost of a rental car, while an insured's own automobile is not available after a covered insurance claim.

3.    Under its Rental Reimbursement Coverage, when American Family declares a vehicle a total loss, it is contractually obligated to pay coverage limited only by a per accident limit, a daily monetary rate, and the "reasonable time ... needed to repair or replace" the totaled vehicle.

4.    In breach of its insurance policy, however, when American Family determines that a vehicle is a total loss, it does not evaluate the "reasonable time ... needed" for an insured to replace the totaled vehicle. Instead, American Family systematically places an arbitrary cap on the length of time it pays Rental Reimbursement Coverage.

5.    For example, when the Knox vehicle was declared a total loss, American Family, arbitrarily and without conducting any investigation into the reasonable amount of time needed to replace the vehicle, instead limited Knox's coverage, providing only six days of coverage after the vehicle was determined to be a total loss. This was a clear breach of American Family's automobile insurance policy, and American Family has no cause or excuse for refusing to pay the full amount of Rental Reimbursement Coverage it was obligated to provide under its insurance policies.

---

[1] A total loss generally means that the insurance company has determined that the cost to repair the damage to an automobile is more than the automobile is worth.

6.      Plaintiffs seek to represent a Class and/or Subclasses of all insureds who have suffered similar injury when American Family arbitrarily and prematurely terminated their Rental Reimbursement Coverage, and to recover all damages and losses owed to them.

## I.      PARTIES

7.      Plaintiffs Lora Knox and Jody Knox are married adult individuals residing at 3034 N. 45th Street, Milwaukee, WI 53210.

8.      Plaintiffs Jeffrey Adams and Erin Adams are adult individuals residing at 2021 SE Anderson Ave., Gresham, OR 97080.

9.      Defendant American Family Insurance Company is a corporation with a principal place of business at 6000 American Parkway, Madison, WI 53783.

10.     Defendant American Family Mutual Insurance Company, S.I. is a corporation with a principal place of business at 6000 American Parkway, Madison, WI 53783.

11.     Defendant American Family Insurance Mutual Holding, Co. is a corporation with a principal place of business at 6000 American Parkway, Madison, WI 53783.

12.     At all relevant times, Defendants acted as the alter ego, on behalf of each other, as the agent or authorized representative of one another, and/or the insurer of Plaintiffs and Class members.

## II.      JURISDICTION AND VENUE

13.     Jurisdiction is proper under 28 U.S.C. § 1332(d)(2) because Plaintiffs seek relief on behalf of a class that will result in at least one class member belonging to a different state than Defendants and the damages of the proposed Class exceed $5,000,000.00.

14.     Venue is proper in the United States District Court for the Western District of Wisconsin pursuant to 28 U.S.C. § 1391(b)(1) as Defendants are all residents of this District.

### III.    FACTUAL BACKGROUND

#### A.  Lora Knox and Jody Knox

##### 1.  The Policy

15.    On or about April 9, 2023, there was in full force and effect an automobile insurance policy, no. 41033-15636-66 (the "Knox Policy"), between Knox and American Family. *See* Knox Renewal Declarations, attached as Exhibit "A."[2]

16.    The Knox Policy provided, among other things, insurance coverage for the use of the Knox's 2014 Hyundai Elantra (the "Knox Vehicle").

17.    The Knox Policy, in addition to other benefits, promised to provide Knox with coverage to rent a replacement vehicle in the event their vehicle was damaged in a loss. These benefits are referred to as Rental Reimbursement Coverage. *See* Renewal Declarations p. 3 of 3, attached as Exhibit "A."

18.    The Knox Policy's Rental Reimbursement Coverage provides as follows:

RENTAL REIMBURSEMENT COVERAGE

This Coverage only applies to a vehicle if Rental Reimbursement Coverage is shown for that vehicle in the **Declarations**.

A.  Definitions
As used in this **endorsement** only:
**Loss** means direct and accidental damage to or theft of **your insured car**, including its equipment and **customization**.

B.  Part II – Car Damage Coverage, section C. Transportation Expenses is deleted and replaced as follows:
Rental Reimbursement Coverage
1.  **We** will pay **your** expenses for the rental of:
    a.  a **private passenger car**; or
    b.  a motor home . . .

---

[2] The Knox Plaintiffs do not possess a copy of their American Family automobile insurance policy currently in effect at the time of their loss and will request in discovery that American Family provide a certified copy.

from an auto rental business.

           *           *           *

3. This coverage only applies if:
   a. **your insured car** is withdrawn from use due to a **loss**; and
   b. the **loss** is covered by Comprehensive Collision Coverage.
4. **Our** payment is limited to the least of:
   a. necessary and actual expenses; or
   b. the daily limit, subject to the maximum coverage amount, as stated in the **Declarations**; <u>**for a reasonable time, as determined by us, needed to repair or replace your insured car**</u>. The daily limit and maximum coverage amount includes all covered transportation expense regardless of the options used. **We** will not apply a deductible to Rental Reimbursement Coverage.

Rental Reimbursement Coverage, attached as Exhibit "B" (emphasis in original and added).[3]

19.    The Knox Policy's declarations page sets forth the length of time Rental Reimbursement Coverage is available, the maximum benefit recoverable, as well as the specific premium charged for this coverage:

|  |  | PREMIUM |
|---|---|---|
| Rental Reimbursement | $35 Daily Limit | $17.60 |
|  | $1,050 Maximum |  |

*See* Knox Renewal Declarations, attached as Exhibit "A." The maximum allowed amount of $1,050 constitutes thirty (30) days of Rental Reimbursement Coverage at the "Daily Limit" of $35 (*i.e.*, $1,050 / $35 = 30 days).

---

[3] While the Knox Plaintiffs do not possess a copy of the full Policy in effect at the time of the loss, their Renewal Declarations identify the Rental Reimbursement Coverage endorsement attached as Exhibit "B" as the form included in Plaintiffs' Policy. *See* Renewal Declarations pp. 1-2 of 3, attached as Exhibit "A" ("**Policy Forms** // These forms apply to the entire policy. . . .  PV 84 03 02 18 Rental Reimbursement Coverage" (emphasis original)); Rental Reimbursement Coverage, attached as Exhibit "B" (Form PV 84 03 02 18). The Knox Loss (defined below) occurred during the policy period in the Renewal Declarations.

### 2.  The Knox's Loss

20.    On or about April 8, 2023, the Knox Vehicle was stolen.

21.    Lora Knox reported the loss to American Family on or about April 8, 2023.

22.    The Knox Vehicle was recovered the following day on April 9, 2023, but due to the damage it sustained, the Knox Vehicle was not usable (the "Knox Loss").

### 3.  The Knox's Rental Reimbursement Coverage Claim

23.    In accordance with the coverage afforded by the Knox Policy, on April 10, 2023, the Knox Plaintiffs secured a rental vehicle from Enterprise.

24.    On or about April 18, 2023, American Family deemed the Knox Vehicle a total loss, advised the Knox Plaintiffs of the total loss settlement figure, and informed them that their rental benefits would end on April 22, 2023 – only 12 days after they obtained their rental vehicle:

> We will continue to provide coverage for your rental vehicle through 4/22/2023.  If you have any questions regarding your rental coverage, please contact me using the information listed below.

*See* American Family 4/18/23 Letter, attached as Exhibit "C."

25.    As the Policy afforded Plaintiffs up to $1,050 (the value of 30 days of Rental Reimbursement Coverage at the maximum daily rate), Lora Knox contacted American Family, as instructed, to get more information on the rental benefits available.

26.    American Family advised that in the case of a damaged vehicle being repaired, the Policy afforded Plaintiffs up to 30 days of rental if the **repairs** took that long, but if American Family deems a damaged vehicle to be a **total loss**, rental benefits are terminated several days after American Family communicates the settlement value of the vehicle to the insureds.

27.    On April 20, 2023, the Knox Plaintiffs reached out to their American Family agent, Camilla Jarman, for clarity on the rental benefits available under their policy:

> Hi Camiile (sic) I need clarity on the amount of days I have for the rental car while [I] look for a new vehicle [I] assumed it would be the 30 days or 1040 dollars cap.  I don't yet see the details in my policy overview[.]  Looking forward to your response thank you.

Knox Email Correspondence at p. 4, L. Knox 4/20/23 Email, attached as Exhibit "D."

28.    American Family agent Camilla Jarman reaffirmed Defendants' prior message about limiting the rental benefits available for a total loss, advising in writing concerning American's Family's standard policy or practice:

> I CC your rental reimbursement claims adjuster.  That is where your policy maxes out if you are having repairs made and it take[s] that [long].  On[c]e a car is determined to be a total loss, they only provide you a few more days.
>
> Jennifer – please reply to Jody Knox.

Knox Email Correspondence at pp. 2-3, C. Jarman (American Family) 4/20/23 Email, attached as Exhibit "D."

29.    The following day, the American Family rental reimbursement claims adjuster emailed the Knox Plaintiffs to again advise in writing that in the event of a total loss, American Family only allows its insureds to continue receiving rental reimbursement coverage for four (4) days after being advised of the total loss figure for the insured vehicle, but agreed to a two day extension because the Knox Plaintiffs did not first obtain their rental vehicle until two days after the loss occurred:

> Good afternoon; The rental coverage limit is showing $1,050, however **when a vehicle is not repairable, we extend the rental for four days from when you get your total loss figures**, if within the limit.  **The rental endorsement language refers to a reasonable amount of time, and we, allow the four days**.
>
> I have added two days; I see you go the rental on 4/10/23 and the loss was 4/8/23, so I will account for that and set a rental last day of Mon[day] 4/24/23.

Knox Email Correspondence at pp. 1-2, J. Schmit 4/21/23 Email, attached as Exhibit "D" (emphasis added).

30.     American Family's stated policy, practice, and procedure of terminating rental benefits is arbitrary and conflicts with the Policy language.

31.     American Family did this while knowing full well that as of April 21, 2023, it was difficult for the Knox to find an adequate replacement vehicle:

> Jennifer [American Family rental reimbursement adjuster] – thank you for the information and extending the rental car. **It is not easy to buy a used car as it used to be.**
>
> Camilla [American Family agent]

Knox Email Correspondence at p. 1, C. Jarman 4/21/23 Email, attached as Exhibit "D" (emphasis added).

32.     The Knox Plaintiffs were unable to locate a replacement vehicle of like kind and quality by April 24, 2023, and secured a replacement vehicle on or about May 9, 2023, when they purchased a 2013 Honda CRV.

33.     In total, the Knox Plaintiffs had a rental car for about thirty (30) days, and the total amount charged by Enterprise for this time period was approximately $897.80, well within the maximum Rental Reimbursement Coverage of $1,050 under their policy.

34.     On the same day that the Knox Plaintiffs purchased their replacement vehicle, they returned the rental vehicle to Enterprise.

35.     American Family issued payment in the amount of (only) $458.71 covering the rental for the time period beginning on April 10, 2023, and ending on April 24, 2023.

36.    Because American Family refused to pay for any rental expenses that the Knox incurred after April 24, 2023, the Knox paid approximately $439.09 out-of-pocket to cover the rental vehicle expenses charged by Enterprise.

37.    Accordingly, the total charges from Enterprise fell within both the time and monetary limits of the Rental Reimbursement Coverage benefits the Knox purchased through the Policy that they purchased from Defendants. *See* Knox Renewal Declarations, attached as Exhibit "A."

38.    American Family's decision to terminate the Knox Plaintiffs' Rental Reimbursement Coverage on April 24, 2023 was not based on the amount of time reasonably needed to replace the Vehicle. Rather, it was based exclusively on American Family's internal, arbitrary policy or practice of terminating rental benefits without determining the amount of time reasonably needed to replace the Vehicle.

39.    While American Family explicitly advised the Knox Plaintiffs that the Rental Reimbursement Coverage language "refers to a reasonable amount of time," American Family made no determination (or effort to determine) the amount of time that the Knox Plaintiffs reasonably needed to replace their Vehicle. *See* Knox Email Correspondence at pp. 2-3, 4/20/23 & 4/21/23 Emails, attached as Exhibit "D."

40.    American Family never provided the Knox Plaintiffs a written explanation of the specific basis in their policy, in relation to the facts, for terminating their Rental Reimbursement Coverage on April 24, 2023.

41.    At the time American Family terminated the Knox Plaintiffs' Rental Reimbursement Coverage benefits, there remained an additional $591.29 in available coverage under the express terms of the insurance contract as detailed above.

42.    At the time American Family terminated the Knox's Rental Reimbursement Coverage benefits, the amount of time reasonably needed to replace the Knox Vehicle had not passed, and the Knox Plaintiffs had not received the full settlement value of their vehicle, and had not replaced their vehicle.

43.    The Knox Plaintiffs were not reasonably able to replace their vehicle for several weeks after American Family terminated their Rental Reimbursement Coverage benefits.

44.    The Knox Policy does not allow for the termination of an insured's Rental Reimbursement Coverage benefits in the event of a total loss earlier than thirty (30) days (the approximate amount of time that is equivalent to the Policy maximum of $1,050 of Rental Reimbursement Coverage at the maximum daily rate), unless and until a specific finding is made by American Family that the "reasonable time, as determined by American Family, needed to replace [the] insured car" is less than that time.

45.    Prior to terminating the Knox Plaintiffs' Rental Reimbursement Coverage benefits, American Family failed to make any specific determination or finding regarding what time period the Knox Plaintiffs reasonably required to replace their vehicle. In other words, American Family terminated the Knox Plaintiffs' Rental Reimbursement Coverage benefits without conducting any investigation into whether the Knox Plaintiffs were afforded the time reasonably needed to replace their vehicle.

46.    American Family terminated the Knox Plaintiffs' Rental Reimbursement Coverage benefits before the Knox Plaintiffs had a reasonable opportunity to locate, purchase, and/or lease a replacement vehicle of like kind and quality.

47.    American Family's unequivocal statement on April 21, 2023 that the Knox Plaintiffs would not be able to recover any benefits under their policy's Rental Reimbursement

Coverage after April 24, 2023, was unfounded, without any reasonable basis in fact, and was in breach of the terms of its contract.

48.    The Knox Policy does not authorize American Family to arbitrarily terminate an insured's Rental Reimbursement Coverage a predetermined number of days after declaring the insured vehicle is a total loss or notifying an insured that their vehicle is a total loss.

49.    Because American Family failed to conduct a good faith investigation, and make a determination into the amount of time that the Knox Plaintiffs reasonably required to replace their vehicle, the Knox Policy contractually prohibited American Family from limiting the Knox Plaintiffs' benefits to a time period of less than thirty (30) days.

50.    American Family issued payment in the amount of $458.71 for a time period beginning on April 10, 2023, and ending on April 24, 2023.

51.    As a result of American Family's breach of contract, the Knox Plaintiffs are entitled to recover the remaining $591.29 of Rental Reimbursement Coverage under their policy.

**B.    Jeffrey Adams and Erin Adams**

**1.    The Adams Policy**

52.    On or about February 8, 2023, there was in full force and effect an automobile insurance policy, no. 1151437104, between the Adams Plaintiffs and American Family (the "Adams Policy").[4] *See* 2/9/23 American Family Letter, attached as Exhibit "E."

53.    The Adams Policy provided, among other things, insurance coverage for the use of the Adams' 2007 Honda Fit (the "Vehicle").

---

[4] The Adams Plaintiffs do not possess a copy of their American Family automobile insurance policy in effect at this time, and will request a certified copy in discovery.

54.    The Adams Policy, in addition to other benefits, promised to provide the Adams Plaintiffs with coverage to rent a replacement vehicle in the event that their Vehicle was damaged in an accident. These benefits are referred to as Rental Reimbursement Coverage.

55.    The Adams Plaintiffs' Policy's Rental Reimbursement Coverage provides, upon information and belief, as follows:

### RENTAL REIMBURSEMENT COVERAGE

This Coverage only applies to a vehicle if Rental Reimbursement Coverage is shown for that vehicle in the **Declarations**.

A.  Definitions
    As used in this **endorsement** only:
    **Loss** means direct and accidental damage to or theft of **your insured car**, including its equipment and **customization**.

B.  Part II – Car Damage Coverage, section C. Transportation Expenses is deleted and replaced as follows:
    Rental Reimbursement Coverage
    1.  **We** will pay **your** expenses for the rental of:
        a.  a **private passenger car**; or
        b.  a motor home . . .
        from an auto rental business.
                    *          *          *
    3.  This coverage only applies if:
        a.  **your insured car** is withdrawn from use due to a **loss**; and
        b.  the **loss** is covered by Comprehensive Collision Coverage.
    4.  **Our** payment is limited to the least of:
        a.  necessary and actual expenses; or
        b.  the daily limit, subject to the maximum coverage amount, as stated in the **Declarations**; <u>**for a reasonable time, as determined by us, needed to repair or replace your insured car**</u>.  The daily limit and maximum coverage amount includes all covered transportation expense regardless of the options used.  **We** will not apply a deductible to Rental Reimbursement Coverage.

Rental Reimbursement Coverage, attached as Exhibit "B" (emphasis original and added).

56.     The Adams Policy, as confirmed by American Family's February 9, 2023 letter, sets forth the length of time Rental Reimbursement Coverage is available, and the maximum benefit recoverable for this coverage:

|  | Incident Limit | Daily Limit |
|---|---|---|
| Rental Reimbursement | $600 | $20 |

*See* 2/9/23 American Family Letter, attached Exhibit "E." The maximum allowed amount of $600 constitutes thirty (30) days of Rental Reimbursement Coverage at the "Daily Limit" of $20 (*i.e.*, $600 / $20 = 30 days).

### 2. The Adams' Accident

57.     On or about February 8, 2023, the Adams' Vehicle was damaged in an accident.

58.     The Adams reported the accident to American Family the following day.

### 3. The Adams Plaintiffs' Rental Reimbursement Coverage Claim

59.     In accordance with the coverage afforded by their policy, on February 9, 2023, Erin Adams secured a rental vehicle.

60.     On or about February 16, 2023, American Family deemed the Adams Vehicle a total loss, advised the Adams Plaintiffs of the total loss settlement figure, and informed them that their rental benefits would end on February 18, 2023 – only 9 days after obtaining the rental vehicle: "We will continue to provide coverage for your rental vehicle through 02/18/23." American Family 2/16/23 Email, attached as Exhibit "F."

61.     The Adams Policy afforded them up to $600 of rental coverage, which amounts to thirty (30) days of coverage at the maximum daily limit of $20 per day.

13

62.     The Adams Plaintiffs questioned Defendants' termination of the Rental Reimbursement Coverage. They understood their Policy provided 30 days of Rental Reimbursement Coverage.

63.     American Family advised the Adams Plaintiffs that because their vehicle was a total loss, they could not have the full 30 days of Rental Reimbursement Coverage afforded by their policy.

64.     American Family issued payment in the amount of approximately $170 covering the rental for the time period beginning on February 9, 2023, and ending on February 18, 2023.

65.     The Adams Plaintiffs were unable to locate a replacement vehicle of like kind and quality by February 18, 2023.

66.     Because Erin Adams needed a vehicle after February 18, 2023, and had not yet found a replacement vehicle, the Adams Plaintiffs kept their rental vehicle beyond the February 18, 2023 Rental Reimbursement Coverage termination date.

67.     In total, the Adams Plaintiffs maintained their rental vehicle for about 13 days, returning the rental vehicle on or about February 21, 2023, and incurring approximately $110 in out-of-pocket rental vehicle expenses.

68.     Accordingly, the total charges from Enterprise fell within both the time and monetary limits of the Rental Reimbursement Coverage benefits that the Adams Plaintiffs purchased through their policy.

69.     American Family's decision to terminate the Adams Plaintiffs' Rental Reimbursement Coverage on February 18, 2023 was not based on the amount of time reasonably needed to replace their vehicle. Rather it was based exclusively on American Family's internal,

arbitrary practice of terminating rental benefits without determining the amount of time reasonably needed to replace the Adams Vehicle.

70.    American Family never provided the Adams Plaintiffs with a written explanation of the specific basis in their policy, in relation to the facts, for terminating their Rental Reimbursement Coverage on February 18, 2023.

71.    At the time American Family terminated the Adams Plaintiffs' Rental Reimbursement Coverage benefits, there remained approximately an additional 20 days and $400 in available coverage under the contract for which they paid valuable consideration.

72.    At the time American Family terminated the Adams Plaintiffs' Rental Reimbursement Coverage benefits, the amount of time reasonably needed to replace the Adams Vehicle had not passed, the Adams Plaintiffs had not received the full settlement value of their vehicle, and the Adams Plaintiffs had not replaced their vehicle.

73.    The Adams Policy does not allow for the termination of an insured's Rental Reimbursement Coverage benefits in the event of a total loss earlier than thirty (30) days, unless and until a specific finding is made by American Family that the "reasonable time, as determined by [American Family], needed to replace [the] insured car" is less than that time.

74.    Prior to terminating the Adams Plaintiffs' Rental Reimbursement Coverage benefits, American Family failed to make any specific finding regarding what time period they reasonably needed to replace their vehicle. In other words, American Family terminated the Adams Plaintiffs' Rental Reimbursement Coverage benefits without conducting any investigation into whether the Adams Plaintiffs were afforded the time reasonably needed to replace their vehicle.

75.    American Family terminated the Adams Plaintiffs' Rental Reimbursement Coverage benefits before the Adams Plaintiffs had a reasonable opportunity to locate, purchase, and/or lease a replacement vehicle of like kind and quality.

76.    American Family's unequivocal statement on February 16, 2023, that the Adams Plaintiffs would not be able to recover any benefits under their policy's Rental Reimbursement Coverage after February 18, 2023, was unfounded, without any reasonable basis in fact, and was in breach of the terms of its contract with the Adams Plaintiffs.

77.    The Adams Policy does not authorize American Family to arbitrarily terminate an insured's Rental Reimbursement Coverage a predetermined number of days after declaring the insured vehicle is a total loss or notifying an insured their vehicle is a total loss.

78.    Because American Family failed to conduct a good faith investigation, and make a determination into the amount of time the Adams Plaintiffs reasonably required to replace their vehicle, the Adams Policy contractually prohibited American Family from limiting the Adams' benefits to a time period less than 30 days.

79.    American Family issued payment in the amount of approximately $170 for ten days of rental, for a time period beginning on February 9, 2023, and ending on February 18, 2023.

80.    As a result of Defendants' breach, the Adams Plaintiffs are entitled to recover the remaining the approximately $400 of Rental Reimbursement Coverage under their policy.

## IV.    CLASS ACTION ALLEGATIONS

81.    American Family's conduct toward Plaintiffs is not unique but is uniform across members of the Class and Subclasses defined below.

82.    American Family wrote and/or issued automobile insurance policies within Wisconsin, Oregon, and throughout the country, which included a Rental Reimbursement

Coverage provision in substantially the same form as the one in the Knox Policy and the Adams Policy (the "Policies").

83.     American Family processed, adjusted, and handled Class members' Rental Reimbursement Coverage claims under the Policies, including the Policies issued to Plaintiffs, in a substantially similar manner: by prematurely terminating Rental Reimbursement Coverage without making any determination as to the amount of time reasonably needed to obtain a substitute vehicle.

84.     In fact, American Family had a policy and/or practice of terminating Rental Reimbursement Coverage benefits in a predetermined number of days following its determination that an insured vehicle is a total loss. To that effect, American Family provides manuals, instructions, direction, and/or training to employees, agents, and/or other personnel regarding the policies and procedures to be used in processing, adjusting, and handing an insured's Rental Reimbursement Coverage claim arising under automobile insurance policies.

85.     This uniform conduct by American Family is a systematic breach of its Policies issued to Plaintiffs and the substantially similar policies issued to members of the proposed Class, and Subclasses which require American Family to pay Rental Reimbursement Coverage for 30 days, or until it determines an earlier period of time was sufficient to reasonably replace a covered vehicle.

86.     As a result of its breaches as set forth in detail herein, Plaintiffs and members of the Class and Subclasses have been uniformly injured when they received less payment for Rental Reimbursement Coverage than American Family was contractually obligated to provide.

87.     This action is brough individually and as a class action pursuant to Federal Rule of Civil Procedure 23.

88. Plaintiffs seek to represent all members of the following Class:

> All insureds in the United States who have been policyholders of automobile insurance policies sold by American Family that included Rental Reimbursement Coverage, who, within the applicable statute of limitations, have made a claim to American Family for Rental Reimbursement Coverage as a result of a total loss of a vehicle damaged in a covered loss, and as to whom American Family limited the amount of time such coverage is provided to a period of time less than thirty (30) days (the "Class").

89. Alternatively, the Knox Plaintiffs and Adams Plaintiffs seek to represent all members of the following Breach of Contract Subclasses:

> Knox: All insureds who are members of the Class and who resided in Wisconsin at the time their vehicles suffered damage that resulted in American Family determining their vehicles were a total loss (the "Wisconsin Breach of Contract Subclass").

> Adams: All insureds who are members of the Class and who resided in Oregon at the time their vehicles suffered damage that resulted in American Family determining their vehicles were a total loss (the "Oregon Breach of Contract Subclass").

90. Additionally, the Knox Plaintiffs seek to represent all members of the following Wisconsin Bad Faith Subclass:

> All insureds who are members of the Class and who resided in Wisconsin at the time their vehicles suffered damage that resulted in American Family determining their vehicles were a total loss (the "Wisconsin Bad Faith Subclass").

91. Excluded from the Class and Subclasses are American Family and each of Defendants' parents, subsidiaries, authorized distributors and affiliates, and their legal representatives, heirs, successors, and assigns of any excluded person.

92. Plaintiffs reserve the right to amend the class and subclass definitions above and/or to identify additional subclasses upon completion of discovery and/or class certification, or the identification and joinder of additional class representatives.

93.    The Class and each Subclass are each so numerous that joinder of all class members is impracticable. Although the exact number and identities of Class and Subclass members are presently unknown, the number can easily be ascertained from American Family's records, databases, and appropriate discovery.

94.    There are questions of fact and law which are common to the Class and Subclasses that predominate over any questions affecting only individual Class and Subclass members. Among the common questions of law and facts are the following, without limitation:

    a.    Whether American Family had a policy and practice of selling automobile insurance policies to insureds with Rental Reimbursement Coverage as set forth in the Policies, without disclosing to Plaintiffs and the members of the Class and Subclasses that American Family will terminate Rental Reimbursement Coverage before the expiration of a thirty (30) day period, and without conducting an analysis or making a finding as to the time period reasonably needed to replace the covered vehicle, as required by the Policies;

    b.    Whether American Family had a policy and practice of selling automobile insurance policies to insureds with Rental Reimbursement Coverage as set forth in the Policies without disclosing to Plaintiffs and members of the Class and Subclasses that American Family would prematurely terminate Rental Reimbursement Coverage benefits based upon terms not found in the Policies, if the insured's vehicle was a total loss, and without conducing an analysis or making a finding as to what time period is reasonably needed to replace the covered vehicle, as mandated by the Policies;

c.  Whether American Family's policy and practice of terminating Rental Reimbursement Coverage benefits earlier than thirty (30) days without conducing an analysis or making a finding as to what time period is reasonably required to replace the covered vehicle is a material reduction of benefits provided by the Policies imposed without any basis;

d.  Whether American Family's policy and practice of terminating Rental Reimbursement Coverage benefits earlier than thirty (30) days without conducting an analysis or making a finding as to what time period is reasonably needed to replace the covered vehicle, is a breach of the Policies;

e.  Whether American Family had a policy and practice of misrepresenting pertinent facts, policies, or contract provisions related to Rental Reimbursement Coverage benefits;

f.  Whether American Family failed to adopt and implement reasonable standards for the prompt investigation of claims; and

g.  Whether American Family had a policy and practice of failing to promptly provide a reasonable explanation of the basis in the Policies in relation to the facts or applicable law for the denial of a claim.

95.  Plaintiffs' claims are typical of the claims of the other members of the Class and Subclasses inasmuch as all such claims arise out of American Family's prior and current standard policies and practices relating to Rental Reimbursement Coverage provisions found in the applicable Policies, and Plaintiffs will assert and pursue the same claims as other members of the Class and Subclasses.

96.     Plaintiffs have no interests antagonistic to the interests of the other members of the Class or Subclasses. Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in the prosecution of class actions and insurance litigation. Accordingly, Plaintiffs are adequate representatives of, and will fairly and adequately protect the interests of the Class and Subclasses as set forth herein.

97.     Class certification is appropriate because American Family has acted or refused to act on grounds generally applicable to the Class and Subclasses, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

98.     Class certification is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, the vast majority of the Class and Subclass members likely would not be in a position to litigate their claims individually and would have no effective remedy at law through which to vindicate their claims against Defendants and be made whole. Class treatment of predominating common questions of law and fact is also superior to multiple individual actions, in that class treatment would conserve the resources of the courts and the litigants and will further the efficient adjudication of the Class and Subclass members' claims.

**<u>COUNT I</u>**
**BREACH OF CONTRACT**
*Brought by Plaintiffs on behalf of the Class and Breach of Contract Subclasses they represent*

99.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth here.

100.    Plaintiffs and members of the Class and the Breach of Contract Subclasses paid American Family premiums as consideration for issuing the Policies.

101.    The Policies constituted valid contracts and were in full force and effect at the time of the Plaintiffs' respective losses and the losses suffered by members of the Class and Breach of Contract Subclasses.

102.    The Policies imposed upon American Family an agreement and a duty to use good faith and apply fair dealing toward Plaintiffs and Class/Breach of Contract Subclass members, its insureds, in handling all claims made under the Policies.

103.    Plaintiffs and Class/Breach of Contract Subclass members have satisfied all their obligations under the Policies, including, but not limited to, all conditions precedent and all conditions subsequent.

104.    American Family materially breached the obligations under the Policies and the law by:

    a.    Failing to properly handle the claims of Plaintiffs and members of the Class and Breach of Contract Subclasses;

    b.    Failing to objectively and fairly evaluate the claims of Plaintiffs and members of the Class and Breach of Contract Subclasses;

    c.    Concocting, creating, and imposing purported policy limitations and exclusions without a reasonable basis in the Policies, fact, or law;

    d.    Concocting, creating, and imposing an unreasonable and self-serving interpretation of the Policies in order to wrongfully withhold and/or reduce benefits due to Plaintiffs and the members of the Class and Breach of Contract Subclasses under the Policies;

    e.    Using claims handling techniques designed to systematically deny and/or reduce payments and prevent claim evaluations;

    f.    Denying, limiting, and/or reducing the coverage provided by the Policies without satisfying the necessary conditions precedent to impose such denials, limitations, and/or reductions;

g.    Denying, limiting, and/or reducing the claims of Plaintiffs and members of the Class and Breach of Contract Subclasses without any reasonable basis in the Policies, fact, or law; and/or otherwise unreasonably and unfairly withholding benefits due under the Policies to Plaintiffs and members of the Class and Breach of Contract Subclasses.

105.    The Policies explicitly impose upon American Family the obligation to determine the amount of time insureds reasonably need to replace their vehicles prior to terminating and/or limiting their Rental Reimbursement Coverage benefits.

106.    American Family materially breached its obligations under the Policies by, without limitation, informing their insureds that their Rental Reimbursement Coverage benefits would be terminated without making a determination of the amount of time reasonably needed to replace those covered vehicles.

107.    As a direct and proximate result of the foregoing acts and/or omissions of American Family, Plaintiffs and members of the Class and Breach of Contract Subclasses were damaged in an amount to be determined at trial.

WHEREFORE, Plaintiffs, individually and on behalf of the proposed Class and Subclasses, demand judgment against Defendants in an amount to be determined at trial, plus additional compensatory and/or consequential damages allowed by law, together with interest, court costs, and such other relief as this Honorable Court shall deem just and proper.

## COUNT II
### BAD FAITH
*By Plaintiffs Lora Knox and Jody Knox, on behalf of the Wisconsin Bad Faith Subclass*

108.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth here.

109.    American Family failed to make a determination of the amount of time the Knox Plaintiffs and members of the Wisconsin Bad Faith Subclass reasonably needed to replace their totaled vehicles prior to terminating benefits available to them under the Rental Reimbursement Coverage.

110.    American Family's application of the provisions of Rental Reimbursement Coverage found in the Policies is contrary to the express terms of the Policies.

111.    American Family misrepresented the coverage available to the Knox Plaintiffs and Wisconsin Bad Faith Subclass members through the Rental Reimbursement Coverage provision.

112.    American Family failed to disclose the coverage available to the Knox Plaintiffs and Wisconsin Bad Faith Subclass members through the Rental Reimbursement Coverage provision.

113.    American Family terminated benefits owed to the Knox Plaintiffs and members of the Wisconsin Bad Faith Subclass purportedly pursuant to the Rental Reimbursement Coverage provision without conducting a reasonable investigation into the amount of time needed to replace the insured vehicles.

114.    American Family refused to issue payment to the Knox Plaintiffs and members of the Wisconsin Bad Faith Subclass owed pursuant to the Rental Reimbursement Coverage provision.

115.    American Family lacked a reasonable basis to withhold benefits owed to the Knox Plaintiffs and members of the Wisconsin Bad Faith Subclass pursuant to the Rental Reimbursement Coverage provision.

116.    American Family recklessly disregarded its lack of a reasonable basis for terminating the Rental Reimbursement Coverage benefits of the Knox Plaintiffs and the Wisconsin Bad Faith Subclass.

WHEREFORE, Plaintiffs Lora Knox and Jody Knox and the Wisconsin Bad Faith Subclass hereby demand judgment against Defendants in an amount to be determined at trial, plus additional compensatory, consequential, and punitive damages together with interest, court costs, attorneys' fees and such other relief allowed under law and this Honorable Court shall deem just and proper.

**COUNT III**
**DECLARATORY JUDGMENT**
*By Plaintiffs Lora Knox and Jody Knox, on behalf of the Class and Wisconsin Subclasses*

117.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth here.

118.    By its terms, the Policies provide that American Family will pay Rental Reimbursement Coverage benefits "for a reasonable time, as determined by [American Family] needed to. . . replace [the] insured car."

119.    The Policies dictate only one authorized justification for American Family to limit rental benefits to a period of time less than that for in the Policies' declarations pages: "the reasonable time, as determined by [American Family], needed to . . . replaced [the] insured vehicle."

120.    The limitation contained in the Policies' Rental Reimbursement Coverage provision imposes upon American Family an explicit obligation to investigate and make a determination as to the amount of time insureds reasonably need to replace their vehicles prior to terminating and/or limiting their rental benefits.

121.    American Family has a policy and/or practice of terminating an insured's Rental Reimbursement Coverage benefits without determining the amount of time reasonably needed to

replace the totaled vehicle. This policy and/or practice stands in contrast to the contractually required standard of the amount of time reasonably needed to replace an insured vehicle.

122.    Plaintiffs Lora Knox and Jody Knox continue to insure their vehicles with American Family and continue to maintain Rental Reimbursement Coverage.

123.    An actual controversy exists because Plaintiffs Lora Knox and Jody Knox paid a specific additional premium to receive the coverage afforded by the Rental Reimbursement Coverage provision found in the Policies, and American Family had adopted policies and/or procedures that deprive Plaintiffs Lora Knox and Jody Knox (and the Class and Wisconsin Subclasses) of the benefits they purchased.

WHEREFORE, Plaintiffs and the Class respectfully request that this Honorable Court:

a. Declare that the Policies impose upon American Family an obligation to determine the amount of time insureds reasonably need to replace their vehicles prior to terminating and/or limiting their benefits under the Rental Reimbursement Coverage provision; and

b. Provide injunctive relief prohibiting American Family from improperly terminating Rental Reimbursement Coverage found in the Policies prior to the expiration of the thirty (30) days of coverage afforded, in the absence of a determination of the amount of time an insured reasonably needs to replace their totaled automobile; and

c. Grant such other relief as this Honorable Court deems just and proper.

Dated: November 15, 2023                    Respectfully submitted,


By:    /s/John Albanese
       John G. Albanese
       **BERGER MONTAGUE PC**

1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
Telephone: (612) 594-5999
jalbanese@bm.net

Shanon Carson
Michael Twersky
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA  19103
Telephone: (215) 875-4656
scarson@bm.net
mitwersky@bm.net

Richard M. Ochroch
Brett N. Benton
Andrew R. Ochroch
**RICHARD M. OCHROCH &**
  **ASSOCIATES, P.C.**
318 S. 16th Street
Philadelphia, PA  19102
Telephone: (215) 735-2707
rochroch@ochroch-law.com
bbenton@ochroch-law.com
aochroch@ochroch-law.com

*Attorneys for Plaintiffs*