IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LORA KNOX and JODY KNOX,
individually and on behalf of all
others similarly situated,

                Plaintiffs,

   v.

AMERICAN FAMILY INSURANCE
COMPANY, AMERICAN FAMILY MUTUAL
INSURANCE COMPANY, S.I., and
AMERICAN FAMILY INSURANCE MUTUAL
HOLDING COMPANY,

                Defendants.

OPINION and ORDER

23-cv-790-wmc

---

Plaintiffs Lora and Jody Knox have filed a first amended complaint seeking to assert putative class action claims for breach of contract and bad faith under Wisconsin law against defendants American Family Insurance Company ("AFIC"), American Family Mutual Insurance Company, S.I. ("AFMICSI"), and American Family Insurance Mutual Holding Company ("AFIMHC") in connection with alleged premature termination of "Rental Reimbursement Coverage" after their insured vehicle was declared a total loss. (Dkt. #24.) Defendants have filed a motion to dismiss defendants AFMICSI and AFIMHC under Federal Rule of Civil Procedure 12(b)(6), because neither entity is a party to plaintiffs' insurance policy. (Dkt. #31.) Defendants argue further that plaintiffs have failed to allege plausibly that they were denied rental car reimbursement under the terms of their policy with AFIC for a reasonable number of days. For the reasons explained below,

defendants' motion will be granted in part as to the claims against AFMICSI and AFIMHC and denied in remaining part as to AFIC.

ALLEGATIONS OF FACT[1]

A. Background

Plaintiffs Lora and Jody Knox (the "Knoxes") are a married couple residing in Milwaukee, Wisconsin. Defendant AFIC is an insurance company, which is owned indirectly by defendant AFMICSI. (Dkt. #32-2, at 18.)[2] Defendant AFMICSI, in turn, is one of many entities owned by defendant AFIMHC, which is a holding company. (*Id*.) All three defendants have their principal place of business in Madison, Wisconsin.[3]

---

[1] Unless otherwise indicated, for purposes of deciding the defendants' motion to dismiss, the facts in this section are considered true and in a light most favorable to plaintiffs from the allegations in the first amended complaint. (Dkt. #24.)

[2] Plaintiffs attach several documents as exhibits to their first amended complaint, including portions of a "Combined Report of the Examination [by the Wisconsin Commissioner of Insurance] of American Family Mutual Insurance [C]ompany, S.I. and its Wisconsin-Domiciled Property and Casualty Subsidiaries" as of December 31, 2021 ("WCI Combined Report"), which outlines AFMICSI's history, its ownership of numerous other insurance companies, and its corporate structure. (Dkt. #24, at ¶ 13; Dkt. #24-1, at 2-16.) Although review is ordinarily confined to the pleadings, a district court may consider documents attached to a complaint when deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639-40 (7th Cir. 2015) (citing Fed. R. Civ. P. 10(c)). Defendants have provided a more complete version of this lengthy report, which is a public record available at: https://oci.wi.gov/Documents/Companies/FinAmFamMutSI.pdf (last accessed February 6, 2025). (Dkt. #32-2, at 2-31.)

[3] Plaintiffs cite no federal statute or constitutional provision that could support federal-question jurisdiction under 28 U.S.C. § 1331, and the current parties are not diverse as required to confer diversity jurisdiction under 28 U.S.C. § 1332. Instead, federal subject matter jurisdiction is premised upon 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act of 2005 ("CAFA"), because plaintiffs seek relief on behalf of a proposed class that will include at least one class member who is diverse, and they seek damages in excess of $5,000,000.00. (Dkt. #24, at 22.)

2

On May 21, 2018, Jody Knox applied for an automobile insurance policy from "American Family Insurance Company." (Dkt. #32-1, at 34-39.) On April 8, 2023, the Knoxes' insured vehicle (a 2014 Hyundai Elantra) was stolen. The stolen vehicle was recovered the following day in damaged condition and was "not usable." On April 10, 2023, the Knoxes secured a rental vehicle from Enterprise in accordance with the terms of their automobile insurance policy with AFIC (Policy No. 41033-15636-66), which included Rental Reimbursement Coverage. (Dkt. #32-1, at 2, 32.)

The relevant portions of the insurance policy promised to provide the following benefits in the event that the Knoxes' insured vehicle was damaged:

RENTAL REIMBURSEMENT COVERAGE

This Coverage only applies to a vehicle if Rental Reimbursement Coverage is shown for that vehicle in the **Declarations.**

  A. Definitions
  As used in this **endorsement** only:
  **Loss** means direct and accidental damage to or theft of **your insured car**, including its equipment and **customization**.

  B. Part II - . . . Rental Reimbursement Coverage

   1. **We** will pay **your** expenses for the rental of:
      a. a **private passenger car**; or
      b. a motor home . . .
         from an auto rental business.

                    * * *

   3. This coverage only applies if:
      a. **your insured car** is withdrawn due to a **loss**; and
      b. the **loss** is covered by Comprehensive Collision Coverage.

   4. **Our** payment is limited to the least of:
      a. necessary and actual expenses; or

3

> b. the daily limit, subject to the maximum coverage amount, as stated in the **Declarations**;
> *for a reasonable time, as determined by **us**, needed to repair or replace **your insured car**.* The daily limit and maximum coverage amount includes all covered transportation expense regardless of the options used. We will not apply a deductible to Rental Reimbursement Coverage.

(Dkt. #24-6, at 2 (bold emphasis in original, emphasis in italics added).) The relevant "Declarations" in the policy limited reimbursement to $35.00 per day for a maximum of 30 days, totaling $1,050.00. (Dkt. #24-3, at 4.)

When seeking clarification of their rental car reimbursement benefits, the Knoxes were told by their insurance agent that in the case of a damaged vehicle being repaired, the policy afforded up to 30 days of rental reimbursement if the repairs took that long, but for vehicles deemed a total loss the rental benefits would terminate "several days" after the settlement value of the vehicle was communicated to them. On April 18, 2023, a claims adjuster wrote to the Knoxes "on behalf of American Family Insurance Company," advising them that their vehicle was a total loss and offering a final net payment for the vehicle. (Dkt. #24-7, at 2-3.) The Knoxes were then told that their rental car benefits would terminate in four days, on April 22, 2023. (*Id.*) An agent later agreed to extend their benefits by an extra two days, through April 24, 2023, but clarified that "[t]he rental endorsement language [in the policy] refers to a reasonable amount of time, and we allow the four days." (Dkt. #24-8, at 3.)

Ultimately, however, the Knoxes were unable to secure a suitable replacement vehicle within the allotted time limit. On May 9, 2023, they purchased a 2013 Honda CRV and they returned their rental car to Enterprise that same day. In total, the Knoxes

4

paid $897.80 for the car they rented from Enterprise for the approximately 30-day period between April 10 to May 9, 2023. Referring to defendants collectively,[4] the Knoxes allege that "American Family" issued payment in the amount of only $458.71, covering the period beginning April 10, 2023, and ending on April 24, 2023. As a result, the Knoxes ended up paying $439.09 out of their own pocket to cover the remainder of their rental car expenses.

B.  The Plaintiffs' Proposed Class Action Claims

Noting that the Rental Reimbursement Coverage benefits in their insurance policy said that it would pay up to $1050.00 for 30 days of rental expenses if their insured vehicle was damaged and needing repairs, the Knoxes claim that they are entitled to recover the full amount of the policy limit ($458.71, plus an additional $591.29, for a total of $1050.00) for the 30 days that they reasonably needed a rental car, despite the fact that the actual cost of their rental vehicle was less than that amount. (Dkt. #24, at ¶¶ 67-68.) The Knoxes also contend that they are entitled to the full amount because the Rental Reimbursement Coverage in their insurance policy promised benefits for "a reasonable amount of time" up to 30 days, but their benefits were terminated prematurely and arbitrarily limited to a period of four days once their vehicle was deemed a total loss

---

[4] Defendants have argued that, by collectively lumping all three entities together under the definition "American Family," the first amended complaint violates Federal Rule of Civil Procedure 8(a) because it does not specify particular involvement on the part of each entity. (Dkt. #32, at 17-18.) The court does not reach this argument because, for reasons set forth below, it dismisses plaintiffs' claims against AFMISCI and AFIMHC for failure to state a claim under Rule 12(b)(6).

without a determination of the amount of time reasonably needed to replace their vehicle. (*Id*. at ¶ 55.)

The Knoxes claim that "American Family" failed to conduct a "good faith investigation" about the amount of time reasonably required to replace their vehicle in breach of the insurance policy, which promised Rental Reimbursement Coverage for a reasonable period of up to 30 days. (*Id*. at ¶ 66.) The Knoxes contend further that "American Family's" conduct is not unique to them but is "uniform" across members of two, proposed subclasses of plaintiffs with similar automobile policies containing the same Rental Reimbursement Coverage provision. (*Id*. at ¶ 67.) Thus, the Knoxes seek to assert claims under Wisconsin state law for breach of contract ("Count 1") and bad faith ("Count 2") on behalf of themselves and other similarly situated class members. (*Id*. at ¶¶ 69-104.)

OPINION

Defendants have moved to dismiss plaintiffs' first amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim against AFMICSI or AFIMHC because neither entity was a party to plaintiffs' insurance policy. (Dkt. #32, at 9.) Defendants argue further that plaintiffs fail to state a claim in any event because the facts alleged do not demonstrate a breach of contract or bad faith with respect to plaintiffs' rental reimbursement benefits. (*Id*. 9-17.)

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff "must allege 'enough facts to state a claim to relief that is plausible on its face.'" *O'Boyle v. Real Time Resolutions, Inc.*, 910 F.3d 338, 342 (7th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When reviewing a motion to dismiss under Rule 12(b)(6), the court must "accept all well-pleaded facts from the [complaint] as true and view them in the light most favorable to the plaintiff." *Demkovich v. St. Andrew the Apostle Parish, Calumet City*, 3 F.4th 968, 973 n.2 (7th Cir. 2021) (en banc) (citing *White v. United Airlines, Inc.*, 987 F.3d 616, 620 (7th Cir. 2021)). However, this tenet is obviously inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678.

I. Claims Against AFMICSI and AFIMHC

Defendants argue that plaintiffs have failed to state a claim against AFMICSI or AFIMHC because the automobile insurance policy in dispute was issued by AFIC, a separate corporate entity. The insurance policy Declarations attached to the first amended complaint identify "American Family Insurance Company" as the insurance company underwriting the policy. (Dkt. #24-3, at 1.) Defendants have provided additional documentation associated with plaintiffs' application for the insurance policy and its renewal that also identify "American Family Insurance Company" as the insurance provider. (Dkt. #32-1, at 2, 34.) Because neither AFMICSI nor AFIMHC are parties to the insurance policy, defendants argue that plaintiffs have failed to state a claim for breach of contract or bad faith against these entities.

A breach of contract claim under Wisconsin law must establish three elements: "(1) a contract between the parties that creates obligations from the defendant to the plaintiff;

7

(2) the defendant's failure to fulfill those obligations; and (3) damages flowing from the breach." *Reno v. Allstate Prop. & Cas. Ins. Co.*, No. 19-cv-387-jdp, 2020 WL 3799162, at *3 (W.D. Wis. July 7, 2020) (citing *Brew City Redev. Grp., LLC v. Ferchill Grp.*, 2006 WI App 39, ¶ 11, 289 Wis. 2d 795, 714 N.W.2d 582). A bad faith claim in the insurance context "is a tort separate and apart from a breach of contract per se," giving rise to a separate claim for damages. *Anderson v. Cont'l Ins. Co.*, 85 Wis.2d 675, 686, 271 N.W.2d 368 (1978). To establish a bad faith claim, a party must show: (1) "the absence of a reasonable basis for denying benefits of the policy"; and (2) "the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Advance Cable Co., LLC v. Cincinnati Ins. Co.*, 788 F.3d 743, 748 (7th Cir. 2015) (quoting *Brethorst v. Allstate Property and Cas. Ins. Co.*, 2011 WI 41, 334 Wis. 2d 23, 798 N.W.2d 467 (2011)). The second part of the test is "subjective and calls for an examination of whether the insurer knew or should have known that it had no reasonable basis to deny the claim." *Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 595 (7th Cir. 2012). Before an insured can sue an insurer for bad faith, however, the insured must first establish a breach of contract by that insurer. *See Brethorst*, 2011 WI 41, at ¶ 65 (concluding that a breach of contract by an insurer is a "fundamental prerequisite" for a bad faith claim against the insurer by the insured).

Defendants argue that plaintiffs fail to establish the first element for a breach of contract claim with respect to AFMICSI or AFIMHC because, although plaintiffs have alleged that "American Family" issued the insurance policy, the policy itself only identifies "American Family Insurance Company" or AFIC as the actual insurer. (Dkt. #32-1, at 2.)

8

Plaintiffs argue that AFMICSI or AFIMHC should be considered insurers and parties to the contract because the policy refers to the insurance company as "**we**, **us**, and **our**," making it unclear which corporate entity is involved. (Dkt. #35, at 35 (emphasis in original).) This argument is wholly unavailing. The insurance policy defines the terms "**[w]e**, **us**, and **our**" to mean "the company shown in the **Declarations** which provides this insurance." (Dkt. #32-1, at 8 (emphasis in original).) The "**Declarations**" are defined to include to the pages showing the plaintiffs' "coverage, limits, vehicles, premiums, and other information for this policy." (*Id*. at 7 (emphasis in original).) Further, the Declarations attached to plaintiffs' policy plainly identify "American Family Insurance Company" as the company providing the insurance. (*Id*. at 2.)

Acknowledging that the Declarations identify AFIC, plaintiffs argue that these pages also feature a corporate logo that simply says, "American Family Insurance," and display the website URL "amfam.com," which they characterize as confusing. (Dkt. #35, at 35.) Plaintiffs also note that the Declarations are signed by William Westrate and David Holman as authorized representatives, who are identified as "President" and "Secretary," respectively, although both appear affiliated with AFIMHC and AFIMSCI, at least as of December 31, 2021. (*Id*.) Other courts have rejected similar arguments, finding that the use of general branding and corporate signatures on an insurance policy does not suggest that the actual insurer is another entity. *Rumick v. Liberty Mutual Ins. Co*., No. 17C2403, 2018 WL 3740645, at *3 (N.D. Ill. Aug. 6, 2018); *Ohio Valley Physicians v. Scottsdale Ins. Co*., No. 1:20-cv-453, 2020 WL 6220062, at *3-4 (S.D. Ohio Sept. 28, 2020). Despite the presence of corporate signatures and the broader branding of documents with

9

"American Family Insurance" or the abbreviation "amfam.com," the applicable policy Declarations unambiguously list American Family Insurance Company as the insurance provider. (Dkt. #32-1, at 2.) Conversely, the Declarations do not even mention AFMICSI or AFIMHC as an insurer, and there is nothing to otherwise suggest that either of those defendants are a party to plaintiffs insurance policy.

Plaintiffs next point to an Amendatory Endorsement clarifying that policy language identifying "American Family Mutual Insurance Company," which was previously defined as an entity forming part of "American Family Insurance Group," now means "American Family Mutual Insurance Company, S.I." (AFMICSI), and states as follows:

> While this policy is in force, each insured named in the Declarations is considered an owner or policyholder and a member of the American Family Insurance Mutual Holding Company (AFIMHC) of Madison, Wisconsin. As a member, you are entitled to one vote at all meetings either in person or by proxy. You can only cast one vote regardless of the number of policies or coverage you purchased. If two or more persons qualify as a member under a single policy, they are considered one member for purposes of voting. The owner of a group policy will have one vote regardless of the number of persons insured or coverage purchased. Fractional voting is not allowed. If you are a minor, any vote will be given to your parent or legal guardian.

(Dkt. #24-5 at ¶ 1.)

As defendants explain, this language "merely confirms that insureds of AFIC (as well as numerous other insurance companies owned by [AFIMHC] are deemed owners of [AFIMHC], as that entity holds the end equity interest in AFIC." (Dkt. #32, at 8 n.5.) Plaintiffs do not refute this explanation and offer no legal basis to conclude that their status as voting members of AFIMHC, as AFIC's ultimate corporate parent, is sufficient to create a contractual relationship between them and AFIMHC or AFMICSI with respect to their

insurance policy, particularly where the applicable Declarations make no mention of either company.

Because plaintiffs have not established that AFMICSI or AFIMHC were parties to the insurance policy, they fail to state a claim for breach of contract or bad faith against these entities and they must direct their claims against AFIC unless there is another basis to hold them liable as non-parties to the policy. *See Rumick*, 2018 WL 3740645, at *3 (citing *Northbound Grp., Inc. v. Norvax, Inc.*, 795 F.3d 647, 651 (7th Cir. 2015) ("It goes without saying that a contract cannot bind a nonparty.") (quoting *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002)).

## II.     Alter-Ego Liability

Even if AFIC is the only defendant that is party to the insurance policy, plaintiffs argue alternatively that the first amended complaint still plausibly alleges that defendants AFMISCI and AFIMHC could be held liable under an "alter-ego" theory. (Dkt. #35, at 37.)  Specifically, plaintiffs allege that AFIMHC owns 100% of AFMISCI, which owns 100% of AFIC.  (Dkt. #24, at ¶¶ 14-15.)  Further, all directors and officers of AFIC are also directors and officers of AFMISCI and AFIMHC.  (*Id*. at ¶¶ 16-17.)  AFIC also allegedly "cedes all of its business" to AFMISCI, which assumes all of AFIC's losses and expenses, and files a consolidated federal tax return on behalf of its many subsidiaries, including AFIC.  (*Id*. at ¶¶ 18-21.)  Plaintiffs argue, therefore, that they have alleged sufficient facts to pierce the corporate veil and find that AFMISCI and AFIMHC control

11

AFIC and are alter egos for purposes of liability. (Dkt. #35, at 38.) However, this is not enough for plaintiffs to invoke an alter ego theory here.

Under Wisconsin law, which the parties agree applies to this issue, all three corporate defendants are entitled to be treated as separate legal entities notwithstanding the fact that two of them (AFMISCI and AFIC) are solely owned by another corporation (AFIMHC). *Trueber v. Newman Machine Co.*, 2000 WI App 116, ¶ 14, 235 Wis. 2d 275, 616 N.W.2d 524. Under Wisconsin law, corporate status and the principle of separateness are not to be disregarded lightly. *Consumer's Co-Op of Walworth Cty. v. Olsen*, 142 Wis. 2d 465, 472, 419 N.W.2d 211, 213 (1988). Rather, the veil of corporate separateness that limits liability may be pierced only "where 'applying the corporate fiction would accomplish some fraudulent purpose, operate as a constructive fraud, or defeat some strong equitable claim.'" *Id*. at 475 (quoting *Milwaukee Toy Co. v. Industrial Comm'n*, 203 Wis. 493, 496, 234 N.W. 748 (1931)).

> Thus, an alter-ego theory of liability requires proof of the following elements:
>
> 1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and
>
> 2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights; and
>
> 3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Id*. at 484. "The absence of any one of these elements prevents 'piercing the corporate veil.'" *Id*. at 485 (citation omitted).

Because plaintiffs' allegations make no mention of corporate control being used to perpetrate fraud or any other wrongdoing, they do not satisfy the requisite elements for establishing alter-ego liability. *See Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 74 (7th Cir. 1992) (concluding that dismissal was appropriate where there was "no indication that [a defendant's] presence in the suit was required to avoid any possible fraud"). Nor do they allege that misrepresentation or "failure to observe corporate formalities" played a role in the complained of loss. *See Olen v. Phelps*, 200 Wis. 2d 155, 163, 546 N.W.2d 176, 180-81 (Ct. App. 1996) (a party seeking to pierce the corporate veil must be able to point to evidence establishing relevant factors, which include "failure to observe corporate formalities, nonpayment of dividends, siphoning of funds of the corporation by the dominant stockholder, non-functioning of other officers or directors, and the absence of corporate records"). Rather, the plaintiffs' loss allegedly stems from AFIC's failure to pay the full amount of rental reimbursement benefits for the 30 days that plaintiffs reasonably required to replace their insured vehicle.

Moreover, plaintiffs fail to otherwise demonstrate that they lack an adequate remedy at law in the form of a breach of contract claim against AFIC, such that the equitable remedy of piercing the corporate veil is appropriate. *See Benjamin Plumbing, Inc. v. Barnes*, 156 Wis.2d 276, 283, 456 N.W.2d 628 ("The rule permitting piercing of the corporate veil . . . is grounded in equity and, as such, reaches wrongful actions for which no adequate remedy at law exists."). Accordingly, plaintiffs' claims against defendants

AFMISCI and AFIMHC will be dismissed for failure to state a claim upon which relief may be granted. This leaves only the claims against AFIC.

### III. Claims Against AFIC

Defendants argue that plaintiffs also fail to state a breach of contract claim because they do not allege an affirmative obligation under the insurance policy to determine the amount of time reasonably needed to replace their insured vehicle. (Dkt. #32, at 9-11.) Defendants argue further that plaintiffs fail to state a claim for bad faith because they have not alleged facts showing that there was no "reasonable basis" to deny their claim for rental car reimbursement for the entire 30 days it took for them to find a replacement vehicle. (*Id*. at 10.) Finally, defendants appear to seek dismissal because, by demanding reimbursement for the maximum amount allowed ($1,050.00), plaintiffs' theory of damages conflicts with the language of the policy, which allows for no more than the "actual loss" incurred. (*Id*. at 14-15.)

Courts are required to "construe an insurance policy to give effect to the intent of the parties, expressed in the language of the policy itself, which we interpret as a reasonable person in the position of the insured would understand it." *Fetherston v. Parks*, 2014 WI App 2, ¶ 7, 352 Wis. 2d 472, 477-78, 842 N.W.2d 481 (citing *Danbeck v. American Family Mut. Ins. Co.*, 2001 WI 91, ¶ 10, 245 Wis. 2d 186, 629 N.W.2d 150). Here, plaintiffs contend that their insurance company -- which defendants do not dispute was AFIC -- breached their insurance policy by failing to uphold its obligation to provide sufficient

14

Rental Reimbursement Coverage benefits after their insured vehicle was declared a total loss.

As noted above, plaintiffs' automobile insurance policy promised to provide reimbursement for renting a replacement vehicle "for a *reasonable time*" needed to "repair or replace" the insured vehicle, as determined by the company providing the insurance. (Dkt. #24-6, at 2 (emphasis added).) The relevant Declarations in plaintiffs' policy set a limit for reimbursement of $35.00 per day, up to 30 days, for a maximum benefit of $1,050.00. (Dkt. #24-3, at 4.) Pointing to this policy language, plaintiffs allege that their insurance company -- which again, defendants do not dispute was AFIC -- had an obligation to reimburse their rental car expenses for a period of up to 30 days, but instead terminated their benefits four days after their insured vehicle was deemed a total loss without determining the amount of time reasonably needed to replace their vehicle. (Dkt. #24, ¶¶ 33-36, 41-46.) As a result, plaintiffs allegedly incurred out-of-pocket costs that they claim were wrongly denied under the terms of their insurance policy. (*Id*. at ¶¶ 50-54.) Plaintiffs further allege that the four-day limit was based on an arbitrary, predetermined number of days rather than a good faith investigation of their needs. (*Id*. at ¶¶ 50, 53, 55, 64-65.) Accordingly, plaintiffs claim that AFIC breached its contractual obligation to reimburse them for the reasonable time a rental car was needed, and did so without making a good faith determination of those needs or offering a reasonable justification for denying benefits. (*Id*. at ¶¶ 69-104.)

Plaintiffs argue that these allegations are adequate to state claims against defendant AFIC for breach of the insurance policy and acting in bad faith by refusing to pay benefits

15

for rental costs incurred during the "reasonable time" required to find a replacement vehicle after they were given notice that their insured vehicle was a total loss. In support of their argument, plaintiffs note that the U.S. Court of Appeals for the Third Circuit has held that a fact-finder could conclude that a five-day limitation on rental car reimbursement benefits was contrary to the insurance policy at issue, which similarly promised coverage for up to 30 days in the absence of a determination that it was reasonable for the insureds to obtain a replacement vehicle sooner. *Stechert v. Travelers Home and Marine Ins. Co.*, 779 F. App'x 958, 960-62 (3rd Cir. 2019).

In response, defendants argue that the Third Circuit's opinion, which is unpublished, is irrelevant because it is based on Pennsylvania law and is designated as "non-precedential." (Dkt. #37, at 14-15.) Although the unpublished opinion in *Stechert* is not binding, the similarity of the policy language and the insurance provider's limitation on rental car reimbursement benefits makes it persuasive. *See Dupree v. Laster*, No. 02-cv-1059, 2007 WL 2746852, at *3 (S.D. Ill. Sept. 19, 2007) ("Until there is binding precedent, the Court is free to follow nonprecedential opinions it believes are insightful.").

Defendants contend further that: (1) it is plaintiffs' burden to *prove* that the rental costs were recoverable under the policy; and (2) they have not alleged sufficient facts establishing whether the amount of time to find a replacement vehicle was, in fact, reasonable. (Dkt. #37, at 10.) At the pleadings stage, however, plaintiffs are only obligated to allege sufficient facts that, accepted as true, "'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Here, plaintiffs have adequately alleged that AFIC breached its contractual obligation to

reimburse them for rental car expenses incurred for the "reasonable time" it took them to find a replacement vehicle and denied coverage without justification in bad faith. Whether plaintiffs can meet their burden of proof by establishing a breach of contract or bad faith for denying coverage in the absence of a reasonable basis for denying benefits involve questions of fact that are not appropriate for resolution on a motion to dismiss under Rule 12(b)(6), where the court is required to accept all well-pleaded facts as true and draw all reasonable inferences in favor of the non-movant. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

Finally, as to defendants' argument about the amount of coverage benefits that plaintiffs are claiming, the amount of damages they are entitled to recover is another issue for a finder of fact, and pleading a different amount is not, standing alone, grounds for dismissing the complaint. *See Olympia Hotels Corp. v. Johnson Wax Dev. Corp.*, 908 F.2d 1363, 1372 (7th Cir. 1990) (under Wisconsin law, "a failure of proof of damages does not justify the dismissal of a claim for breach of contract" given that the victim is always entitled to nominal damages if he proves a breach but no damages). Because plaintiffs have adequately stated claims for relief against AFIC, defendants' motion to dismiss under Rule 12(b)(6) will be denied as to this defendant.

ORDER

IT IS ORDERED that:

1. The defendants' motion to dismiss the first amended complaint (dkt. #31) is GRANTED IN PART as to the claims against defendants American Family Mutual Insurance Company, S.I., and American Family Insurance Mutual

Holding Company, and DENIED IN PART as to the claims against defendant American Family Insurance Company.

2. Going forward, the clerk's office shall amend the case caption by removing American Family Mutual Insurance Company, S.I., and American Family Insurance Mutual Holding Company as defendants.

Entered this 10th day of April, 2025.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge